**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:26-cv-20982-KMM

LUIS FRANCISCO LACAYO DELGADILLO,

     Petitioner,

JIMY ORLANDO ZELAYA CALERO,

     Consolidated Petitioner,

ROBERTO JOSE CORDOVA PEREZ,

     Consolidated Petitioner,

ERICK ANTONIO HERNANDEZ PEREZ,

     Consolidated Petitioner,
v.

WARDEN, KROME NORTH SERVICE
PROCESSING CENTER, *et al.*,

     Respondents.

_____/

**ORDER**

THIS CAUSE came before the Court upon the Petitions for Writ of Habeas Corpus (the "Petitions") filed by Petitioner Luis Francisco Lacayo Delgadillo ("Lacayo Delgadillo") (ECF No. 1), Jimy Orlando Zelaya Calero ("Zelaya Calero") (ECF No. 10), Roberto José Cordova Perez ("Cordova Perez") (ECF No. 14), and Erick Antonio Hernandez Perez ("Hernandez Perez") (ECF No. 12).[1]  The Court issued an Order to Show Cause (the "OTSC") requiring Respondents to file one consolidated memorandum of fact and law to show cause why Lacayo Delgadillo's Petition

---

[1] Petitioner Darvin Crisler Coronado-Coronado's Petition was voluntarily dismissed without prejudice. *See* (ECF Nos. 8, 23, 24).

should not be granted. *See generally* (ECF No. 5). The Court then consolidated Lacayo Delgadillo's case with that of the other Petitioners upon a finding of common questions of law or fact pursuant to Federal Rule of Civil Procedure 42(a) and ordered Respondents to file one consolidated response addressing all Petitioners. *See* (ECF Nos. 6, 7, 9, 11). Respondents thereafter filed a Response to Order to Show Cause (the "Response" or "Resp.") (ECF No. 13), and Lacayo Delgadillo filed a Reply thereto (the "Reply") (ECF No. 15). The other Petitioners did not file a reply, and the time to do so has passed. Following the Response and Reply, Hernandez Perez filed another petition that appears largely duplicative of his initial Petition, and therefore the Court only considers the first one herein. The Petitions are now ripe for review. As set forth below, the Petitions are each GRANTED IN PART as to Petitioners' entitlement to a bond hearing. The Court makes no determination as to whether Petitioners are in fact entitled to be released following such a hearing.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The Court briefly reviews the factual background as to each Petition.

### A.  Petitioner Lacayo Delgadillo

Lacayo Delgadillo alleges that he has resided in the United States since entering the country on or about July 28, 2021. (ECF No. 1) ¶ 3; Resp. at 2. A citizen of Nicaragua, he was apprehended after arriving in Arizona but thereafter released on his own recognizance. (ECF No. 1) ¶ 26. Approximately a year later on June 28, 2022, he applied for asylum with the United States Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 27. On June 17, 2025, Lacayo Delgadillo received a Notice of Dismissal of Form I-589 from USCIS indicating that Respondent Department of Homeland Security ("DHS"), named through its Secretary Kristi Noem, had issued a Notice and Order of Expedited Removal when he was apprehended in 2021 such that his I-589 asylum

application could not be processed, and thereafter on December 2, 2025, USCIS issued a notice for a credible fear interview scheduled for December 22, 2025. *Id.* ¶¶ 28–29. Lacayo Delgadillo attended that interview at the USCIS Miami Asylum Office, where he was detained after his interview and thereafter transferred to Respondent Krome North Service Processing Center ("Krome"), named through its Warden, where he remains detained. *Id.* ¶¶ 30–31; Resp. at 2.

On January 20, 2026, an Immigration Judge at Krome vacated the prior negative finding of credible fear as to Lacayo Delgadillo. (ECF No. 1) ¶ 32. At a February 3, 2026 hearing following his request for a bond hearing, he presented evidence that he is not a flight risk or a danger to the community but the Immigration Judge took the position that she was without jurisdiction to issue a bond based on the determination that he is mandatorily detained pursuant to 8 U.S.C. § 1225(b)(2)(A) rather than 8 U.S.C. § 1226(a), which provides for a bond hearing. *Id.* ¶¶ 33, 44. Lacayo Delgadillo further alleges numerous psychological and physical health issues from which he suffers and which are exacerbated due to his detention, including certain existing health issues which he alleges are not being properly treated by Krome officials. *Id.* ¶¶ 34–37.

Lacayo Delgadillo asserts two Counts based on Respondents' application of § 1225(b)(2) to his detention: (1) violation of the Immigration and Nationality Act ("INA"); and (2) violation of the Fifth Amendment right to due process. (ECF No. 1) ¶¶ 42–56. Thus, Lacayo Delgadillo asks the Court to: (1) assume jurisdiction over this matter; (2) order Respondents to show cause within three days why his Petition should not be granted; (3) declare his ongoing detention to violate 8 U.S.C. § 1226 and the Due Process Clause of the Fifth Amendment; and (4) issue a preliminary injunction or writ of habeas corpus directing Respondents to immediately release him or at a minimum afford him a bond hearing. (ECF No. 1) at 11.

### B.  Petitioner Zelaya Calero

Zelaya Calero alleges that he has resided in the United States since entering the country on or about December 2, 2013.  (ECF No. 10) ¶ 16; Resp. at 3.  A native of Honduras, he was not encountered by any law enforcement and entered the country without inspection.  (ECF No. 10) ¶ 16; Resp. at 3.  He has lived continuously in Florida since 2013 with his wife, who is an American citizen, and had petitioned for his immigration status in September of 2023, which petition was approved on or about January 7, 2025.  (ECF No. 10) ¶ 18.  He remained released until Respondent U.S. Immigration and Customs Enforcement ("ICE"), named through its Acting Director, detained him on December 3, 2025 and informed him he would be detained without bond.  (ECF No. 10) ¶ 19; Resp. at 3.  Zelaya Calero remains detained at Federal Detention Center Miami pending his removal proceedings.  (ECF No. 10) ¶ 19; Resp. at 3; (ECF Nos. 13-1, 13-2).

Zelaya Calero asserts four Counts based on his detention without opportunity to be heard on bond:  (1) violation of his substantive due process rights under the Fifth Amendment; (2) violation of his procedural due process rights under the Fifth Amendment; (3) violation of the INA; and (4) violation of the Administrative Procedure Act ("APA").  (ECF No. 10) ¶¶ 24–49.  Thus, Zelaya Calero asks the Court to:  (1) assume jurisdiction over the matter; (2) declare that his continued immigration detention violates the Fifth Amendment, the INA, and the APA; (3) issue a writ of habeas corpus ordering Respondents to immediately release him or hold a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a); (4) issue an order preventing Respondents from taking him into custody again unless he is determined to be a flight risk and/or danger to the community; and (5) award him costs incurred in this action.  (ECF No. 10) at 9–10.

### C.  Petitioner Cordova Perez

Cordova Perez, proceeding *pro se*, is a native of Cuba currently in ICE custody at the

Broward Transitional Center.  (ECF No. 14) at 1;[2] Resp. at 4; (ECF Nos. 13-3, 13-4).  He entered the United States without admission or inspection on or about February 27, 2022 near Eagle Pass, Texas, since which time has been continuously present in the country, and near the time of his entry he was placed into removal proceedings under 8 U.S.C. § 1229a and thereafter released on his own recognizance.  (ECF No. 14) at 1; Resp. at 4; (ECF No. 13-3).  Upon DHS's motion, Cordova Perez's § 1229a removal proceedings were dismissed by an Immigration Judge on November 18, 2025, and his appeal of that decision as well as his request for humanitarian parole remain pending.  (ECF No. 14) at 1–2; Resp. at 4; (ECF Nos. 13-5, 13-6).  Cordova Perez requests the Court grant him an individualized bond hearing or release him as he is not a flight risk or danger to the community.  (ECF No. 14) at 1–2.  Thus, he asks the Court to:  (1) grant his Petition; (2) declare that prolonged detention without an individualized bond hearing violates the Fifth Amendment; (3) order Respondents to provide an immediate custody hearing before an Immigration Judge; and (4) alternatively, order his release under reasonable supervision.  *Id.* at 3.

### D.  Petitioner Hernandez Perez

Hernandez Perez, proceeding *pro se*, is a native of Guatemala currently in ICE custody at Krome.  (ECF No. 12) at 1; Resp. at 12; (ECF No. 13-7).  He was transferred into ICE custody on December 28, 2020 from Palm Beach County Jail, where he was detained for driving under the influence.  Resp. at 4; (ECF No. 13-7).  He was issued a Notice to Appear ("NTA"), which was filed on January 15, 2021, charging him with inadmissibility based on his entry into the United States without having been admitted or paroled, in violation of INA § 212(a)(6)(A)(i), and entry without possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document, in violation of INA § 212(a)(7)(A)(i).  Resp. at 4–5; (ECF No. 13-8).

---

[2] The Court uses the CM/ECF pagination, which appears in the header of all filings.

On March 2, 2021, an Immigration Judge denied Hernandez Perez's application for cancellation of removal for nonpermanent residents, pursuant to 8 U.S.C. § 1229a, and denied voluntary departure, which decision he timely appealed.  Resp. at 5; (ECF Nos. 13-9, 13-10).

On April 16, 2021, he was released from custody on his own recognizance on Form I-220A.  Resp. at 5; (ECF No. 13-11).  However, his release on his own recognizance was revoked pursuant to 8 C.F.R. 2361.1(c)(9) on October 6, 2021, at which time he was brought back into ICE custody where he remains.  (ECF No. 12) at 6; Resp. at 5; (ECF No. 13-11).  On December 31, 2025,  the Board of Immigration Appeals ("BIA") dismissed his pending appeal, but remanded for the issue of voluntary departure.  Resp. at 5; (ECF No. 13-12).

On this basis, Hernandez Perez brings four Grounds generally challenging his continued civil detention without an individualized determination as to whether he is a flight risk or presents a danger to the community, as well as asserting that his re-detention without justification violates his due process rights.  *See* (ECF No. 12) at 6–7.  Thus, Hernandez Perez asks the Court to order his immediate release from immigration detention, or in the alternative, order a bond hearing before an Immigration Judge.  *Id.* at 7.

### E.  Procedural History

In the OTSC, the Court assumed jurisdiction over Lacayo Delgadillo's Petition, ordered that he was not to be transferred out of this District until the instant proceedings are terminated, ordered Respondents to file one consolidated memorandum of law and fact to show cause why Lacayo Delgadillo's Petition should not be granted, and deferred consideration of the other relief requested in the Petition until after the Response and Reply had been reviewed.  *See* (ECF No. 5) at 3–4.  In each Paperless Order Consolidating Cases, the Court ordered that all provisions of the OTSC except for the time to respond remained in force as to all other Petitioners upon

consolidation. *See* (ECF Nos. 6, 7, 9, 11). The Response and Lacayo Delgadillo's Reply have since been filed. *See* (ECF Nos. 13, 15).

Respondents argue that Lacayo Delgadillo is in expedited removal proceedings such that the Court lacks jurisdiction to hear his Petition and he is properly detained pursuant to 8 U.S.C. § 1225(b)(1), and that there is no due process violation upon detention pending an asylum determination. Resp. at 5–10. As to Zelaya Calero, and Hernandez Perez, Respondents argue that they are properly detained pursuant to 8 U.S.C. § 1225(b)(2) as applicants for admission and that § 1226(a) is inapplicable, that Petitioners failed to exhaust their administrative remedies, that the Court is without jurisdiction to review Petitioners' claims under 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9), and the APA does not provide relief. *See* Resp. at 10–20. As to Cordova Perez, Respondents argue that because DHS moved to dismiss his removal proceedings under 8 U.S.C. § 1229a, which dismissal he has appealed, upon resolution of the appeal he would be subject to expedited removal under 8 U.S.C. § 1225(b)(1) that would divest the Court of jurisdiction to hear his claims. Resp. at 20–22. Lacayo Delgadillo argues in opposition that he is not in fact in expedited removal proceedings and therefore is not subject to § 1225(b)(1)'s detention provisions. *See generally* Reply.

## II.    LEGAL STANDARD

Section 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 533 U.S. 674, 693 (2008) (citation omitted). The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that

confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Further, for "'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). The Court's habeas jurisdiction extends to challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.   DISCUSSION

### a.   The Policy

The new policy underlying this action, "Interim Guidance Regarding Detention Authority for Applicants for Admission" (the "Policy"), was announced by ICE and promulgated by Respondent U.S. Department of Homeland Security ("DHS") in coordination with the Department of Justice and defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1)." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (the "ICE Memo"). The Policy then states that "[e]ffective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole." *Id.* Contrary to previous practice, the Policy imposes mandatory detention regardless of the circumstances of an alien's entry without inspection or admission. *See generally* ICE Memo.

The BIA adopted a consistent position in *Matter of Yajure Hurtado*, which affirmed as a matter of first impression an Immigration Judge's holding that "he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to

8

mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235(B)(1)(ii)." 29 I. & N. Dec. 216, 229 (BIA 2025). On February 18, 2026, the Honorable Sunshine S. Sykes of the United States District Court for the Central District of California issued an Order wherein *Matter of Yajure Hurtado* was vacated as contrary to law under the APA. *See* Order Granting Plaintiff Petitioners' Motion to Enforce Judgment at 19, *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873 (C.D. Cal. Feb. 18, 2026). However, that decision was appealed and the Ninth Circuit granted the Government's request for a stay pending appeal of certain orders issued in the Central District of California case, including the order vacating *Matter of Yajure Hurtado*. *See* Order from Ninth Circuit Court of Appeals, *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873 (C.D. Cal. Mar. 31, 2026). Thus, *Matter of Yajure Hurtado* remains in effect pending resolution of that appeal.

Immigration Court refusals to provide bond hearings had already been the subject of much dispute, and as discussed below the Policy has been heavily litigated across the country. The overwhelming outcome of these cases—including in this District—was initially a rejection of refusals to hear bond and/or the Policy as violating the INA in applying § 1225(b), instead of § 1226(a) as required by the INA, to people who entered without admission but were apprehended some time after prior entry, in contrast to those apprehended upon entry or soon thereafter at U.S. ports of entry. *See generally, e.g.*, *Puga v. Ass. Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-cv-24535, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025) (Altonaga, C.J.); *Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-cv-20217, 2026 WL 496726 (S.D. Fla. Feb. 23, 2026) (Becerra, J.); *Castro v. Parra*, No. 26-cv-20422, 2026 WL 788019 (S.D. Fla. Mar. 20, 2026) (Bloom, J.); Order, *Cerro Perez v. Parra et al.*, No. 25-cv-24820, at *6–11 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (collecting cases). Nevertheless, a distinct split

has emerged since. *See generally, e.g.*, *Rocha Vargas v. Miami Fed. Det. Ctr.*, No. 25-cv-25966, 2026 WL 911291 (S.D. Fla. Apr. 2, 2026) (Ruiz, J.) (finding detention pursuant to § 1225(b) proper); *Morales v. Noem*, No. 25-cv-62598, 2026 WL 236307 (S.D. Fla. Jan. 29, 2026) (Singhal, J.) (same); *Mokanu v. Warden Miami Fed. Det. Ctr.*, No. 25-cv-24121, 2026 WL 472294 (S.D. Fla. Feb. 19, 2026) (Artau, J.) (same); *Hernandez v. Miami Field Off. Dir.*, No. 26-cv-20440, 2026 WL 554694 (S.D. Fla. Feb. 27, 2026) (Altman, J.) (same).

The Fifth and Eighth Circuits have both held, as the first Circuit Courts to do so, that aliens in situations such as Petitioner's are properly detained pursuant to § 1225(b)(2)(A) and are therefore not entitled to release on bond. *See generally Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). On the other hand, the Second Circuit in *Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044 (11th Cir. Apr. 28, 2026) determined that those same aliens are properly detained pursuant to § 1226(a) and are therefore entitled to a bond determination. The Eleventh Circuit, within which this Court sits, has now similarly found that § 1226(a), and not § 1225(b)(2)(A), covers the detention of aliens found already present in the country and therefore that such detainees are eligible for bond while going through immigration proceedings. *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026).

### b. Administrative Exhaustion

As an initial matter, the Court agrees with Petitioners that administrative exhaustion would be futile. Exhaustion may be excused "where no genuine opportunity for adequate relief exists . . . or an administrative appeal would be futile." *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (citations omitted). This is plainly the case here, where Immigration Judges may only properly reach one conclusion absent new precedent from the BIA. *See Puga*, 2025 WL 2938369,

at \*2 ("Thus, considering *Matter of Yajure Hurtado*, it appears evident that an alien like Petitioner, who has resided in the United States for years but has not been admitted or paroled, will be subject to mandatory detention without bond under section 1225(b)(2) upon review by the BIA." (citing *Matter of Yajure Hurtado*, 29 I&N Dec. at 221)); Order, *Cerro Perez*, No. 25-cv-24820, at \*3 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (finding initial bond hearing request futile).

The Court fails to find any basis upon which a bond appeal to the BIA or request for reconsideration or release to an Immigration Judge could possibly result in an outcome other than sustaining Petitioners' detention pursuant to § 1225(b)(2)(A) to the extent *Matter of Yajure Hurtado* continues to be in effect while the Ninth Circuit appeal in *Maldonado Bautista* remains pending.  Thus, the Court finds that any prudential exhaustion requirements that may be applicable here are excused for futility.

### c.  Statutory Framework

Turning then to the merits of the Petitions, as an initial matter, "[t]he question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction."  *Sanchez-Moralez*, 2026 WL 496726, at \*3.  The Eleventh Circuit has now directly answered this question:  § 1226(a) applies to "unadmitted aliens found in the interior of the United States." *Hernandez Alvarez*, 175 F.4th at 1261.  In reaching this conclusion, the Eleventh Circuit considered the text, statutory structure, and history of the INA to determine that the terms "applicant for admission" and "seeking admission" may be synonymous on their plain and ordinary meaning but cannot mean the same thing here where "applicant for admission" is a defined term and "seeking admission" is not. *See id.* at \*5–20.  As set forth below, this is dispositive of which provision applies to the detention of aliens already present in the United States.

An "applicant for admission" under 8 U.S.C. § 1225 is defined as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." *Id.* § 1225(a)(1). Section 1225(b)(1) encompasses "all aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," which group of people is generally subject to expedited removal unless they are referred for a credible fear interview and thereby detained pending further consideration of their asylum claim. *Id.*

Section 1225(b)(2) is broader and "serves as a catchall provision that applies to applicants for admission not covered by § 1225(b)(1)," subject to several exceptions. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Under § 1225(b)(2), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title," which governs removal. 8 U.S.C. § 1225(b)(2)(A); *id.* § 1229a. The term "seeking admission" is not defined. *See id.* § 1225(b)(2)(A); *see generally id.* § 1101. Importantly, detention under § 1225(b)(2) is mandatory, subject to DHS's discretionary parole authority "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *See* 8 U.S.C. § 1225(b)(2); 8 U.S.C. § 1182(d)(5)(A); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025); 8 U.S.C. § 1182(d)(5)(A). Such discretionary parole, however, "shall not be regarded as an admission of the alien" and once the purposes thereof have been satisfied, the "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

The Government is also permitted to "detain certain aliens already in the country pending

the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289.  Section 1226(a) provides that upon warrant issued by the Attorney General, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Subject to the provisions of § 1226(c), which applies to the detention of aliens facing criminal charges, pending a decision on whether an alien is to be removed, the Attorney General:  (1) may continue detention; (2) may allow release on a bond of at least $1,500 or on conditional parole; and (3) may not provide work authorization unless the alien is a lawful permanent resident or otherwise would receive such authorization.  *Id.* §§ 1226(a)(1)–(3).

Unlike § 1225(b)(2), § 1226 provides for a "discretionary detention framework."  *See* 8 U.S.C. § 1226(a); *Gomes*, 804 F. Supp. 3d at 269.  The arresting immigration officer makes an initial custody determination, which aliens detained under this provision may appeal in a bond hearing before an Immigration Judge.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).  Federal regulations require that under § 1226(a), detainees are entitled to "bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("To be sure, a noncitizen detained under § 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.").[3]

The crucial determination, therefore, is whether a person found within the United States and detained in a manner unrelated to any immigration actions (e.g., after a normal traffic stop rather than upon applying for asylum) is nevertheless properly considered an "alien seeking admission" so as to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  Such a finding would require a reading that all "applicants for admission," which is any alien present

---

[3] To the extent other cases use the term "noncitizen" interchangeably with "alien," the Court notes that the term "noncitizen" does not appear in the applicable provisions of the INA.  The Court uses the term "alien" herein according to its meaning in the applicable provisions of the INA.

without admission or arriving, are also "seeking admission." *Id.* As discussed above, the Eleventh Circuit found that those two terms are not in fact synonymous, and that a person may fall within the definition of "applicant for admission" without also seeking admission, which in that case was detention following a traffic stop. *Hernandez Alvarez*, 175 F.4th at 1269 ("Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry."); *see also Buenrostro-Mendez*, 166 F.4th at 511 (Douglas, J., dissenting) ("The majority's attempt to read the definition of 'applicant for admission' back into the phrase 'seeking admission,' as if sharing a word necessitates sharing a meaning, is unpersuasive.").

As the Supreme Court has noted, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). In this vein, the Eleventh Circuit concludes as follows:

> Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—"an alien who is an applicant for admission" and "an alien seeking admission"—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years.
>
> We therefore reject the Government's reading and affirm the district court's orders granting each of the Petitioners habeas corpus relief.

*Hernandez Alvarez*, 175 F.4th at 1285.

### d. Petitioners' Detention

#### i. Jurisdictional Bars

Because federal courts are "courts of limited jurisdiction" vested with a *sua sponte*

obligation to ensure their own jurisdiction over any matter, the Court starts first with Respondents' arguments that the Court may not review Lacayo Delgadillo's claims under 8 U.S.C. § 1225(b)(1) and § 1252(a)(2)(A)(i) where he has been placed in expedited removal proceedings.  Resp. at 5–9.  Where an alien is detained pursuant to § 1225(b)(1), the Court lacks jurisdiction to review "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal," except as to:

> (A) whether the petitioner is an alien,
> (B) whether the petitioner was ordered removed under such section, and
> (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

8 U.S.C. §§ 1252(a)(2)(A)(i), (e)(2).  Here, Lacayo Delgadillo argues that he is not in fact in expedited removal proceedings.  *See generally* Reply.  Accordingly, the Court has jurisdiction to review this claim under 8 U.S.C. § 1252(e)(2)(B) to determine whether he is in removal proceedings subject to § 1225(b)(1).

Here, the Court agrees with Lacayo Delgadillo that Respondents have failed to demonstrate that he is currently detained subject to § 1225(b)(1) and in expedited removal proceedings.  Respondents rely on Lacayo Delgadillo's petition to assert that he was issued a Notice of Expedited Removal before being released on his own recognizance, but they do not provide any evidence to substantiate that and moreover did not provide the Court with a copy of Lacayo Delgadillo's subsequent NTA, issued on December 31, 2025, which has now been provided and does not reflect expedited removal proceedings.  *See* Resp. at 5; Reply at 3; (ECF No. 15-1).  Lacayo Delgadillo also argues even assuming *arguendo* that he had been in expedited proceedings, following a negative credible fear finding, 8 C.F.R. 1208.30(iv)(B) specifies that removal proceedings shall be

pursuant to 9 U.S.C. § 1229a, which is not the statute encompassing expedited removal proceedings. Reply at 3; *see also* Resp. at 5 ("An alien present in the United States without admission or parole may be removed from the United States by expedited removal under 8 U.S.C. § 235(b)(1) or removal proceedings before an immigration judge under 8 U.S.C. § 1229a."). The Court is thus satisfied that Lacayo Delgadillo is not in expedited removal proceedings and therefore not detained pursuant to § 1225(b)(1), such that he is similarly situated to the other Petitioners in this action.

Before moving on to the merits, the Court addresses Respondents' other jurisdictional arguments, applicable to all Petitioners, that the Court may not review Petitioners' claims under 8 U.S.C. § 1252(g) and § 1252(b)(9). Resp. at 16–20; *Gunn v. Minton*, 568 U.S. 251, 256 (2013). Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). According to Respondents, taking § 1252(g) and § 1252(b)(9) together, Petitioners' detention "clearly 'arises from' the decision to commence removal proceedings

against an alien" such that this Court lacks jurisdiction to consider the issue of detention without bond.  Resp. at 17 (collecting cases).

The Court finds that its previous determination that it has jurisdiction over this matter is not disturbed by either of these provisions.  Section 1252(g) is a "narrow" provision only encompassing the decision to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders."  *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.").  Detention is not one of these enumerated decisions, and therefore challenges to the same are not barred by this statute.  *See Merino v. Ripa*, No. 25-cv-23845, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025) (collecting cases).  As to § 1252(b)(9), the Supreme Court has rejected an "expansive interpretation" of that statute that would deprive a court of jurisdiction to review detention without a bond hearing.  *Jennings*, 583 U.S. at 293.  Accordingly, the Court is satisfied that it properly has jurisdiction to entertain the instant Petitions.

### i.    Application to the Petitions

Having cleared the jurisdictional hurdles, then, the Court turns to the merits of the Petitions. Applying the foregoing statutory framework Petitioners are properly considered an applicant for admission as an alien present in the United States who has not been admitted under § 1225(a)(1), but are not "seeking admission" within the meaning of § 1225(b)(2)(A).  For the reasons discussed above, "seeking admission" and "applicant for admission" are not synonymous, and there is no contention that Petitioners were somehow attempting to secure admission into the country when any of the Petitioners were detained in the interior of the country.  Although Lacayo Delgadillo was detained following his credible fear interview, which might be construed as an act of seeking

17

admission into the United States, he was not detained as part of that interview as would be the case with an alien detained during an interaction with an immigration officer at the border upon seeking to enter. Instead, it is undisputed that he was detained *after*. (ECF No. 1) ¶ 30; Resp. at 2. Further, the statute requires that an "examining immigration officer" determine that an alien be one "seeking admission" to invoke mandatory detention pending a § 1229a proceeding, and there is no indication in the materials provided by Respondents that such determination occurred when Petitioners were detained in 2025. *See id.* § 1225(b)(2)(A); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025).

Briefly reviewing Respondents' arguments to the contrary, they first argue that Petitioners are subject to detention as an applicant for admission under 8 U.S.C. § 1225(b)(2)(A) as clarified in *Matter of Yajure Hurtado*. Resp. at 10–14. For the reasons discussed above, that Petitioners are an applicant for admission still does not bring them within the ambit of § 1225(b)(2)(A) because they were not seeking admission at the time that they were detained.[4] *See Hernandez Alvarez*, 175 F.4th at 1285 (rejecting the government's argument that petitioners were seeking admission because they did not voluntarily self-deport following their arrest and initiation of removal proceedings). Respondents further assert that § 1226(a) has no impact and that applicants for admission may only be released from detention under 8 U.S.C. § 1182(d)(5) parole, which are both unavailing arguments based on the foregoing determination that § 1226(a) properly governs. Resp. at 14–16. As to Cordova Perez, where his immigration appeal has not been adjudicated yet Respondents state he is purportedly detained under § 1225(b)(2), rather than in expedited removal proceedings, and therefore his continued detention without bond is improper for the same reasons

---

[4] Further, the Court "need not defer to the BIA's interpretation of law simply because the statute is ambiguous." *See Puga*, 2025 WL 2938369, at *5 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024)).

as for the other Petitioners.

For the reasons set forth above, the Court finds that § 1226(a) and its implementing regulations govern Petitioners' detention, not § 1225(b)(2)(A), and therefore that Petitioners are detained in violation of the laws of the United States pursuant to 8 U.S.C. § 2241.  Accordingly, Petitioners are entitled to an individualized bond hearing as a detainee under § 1226(a).

### e.  Due Process Violation

The Court will not reach the merits of Petitioners' due process claims because the relief requested in the other Counts is granted for the reasons stated above.  *See Puga*, 2025 WL 2938369, at *6; *Castro*, 2026 WL 788019, at *6.  Should Respondents fail to provide Petitioners with a bond hearing as ordered herein, Petitioners may renew each of their due process claims.

## IV.  CONCLUSION

Accordingly, UPON CONSIDERATION of the Petitions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Petitions (ECF Nos. 1, 10, 12, 14) are each GRANTED IN PART.  The Court will not award fees and costs under the Equal Access to Justice Act upon a finding that Respondents' asserted position was substantially justified under the circumstances.  *See* 28 U.S.C. § 2412(d)(1)(A).  Within seven (7) days of this Order, Respondents shall provide Petitioners with an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release Petitioners. Such bond may not be denied on the basis that Petitioners are detained pursuant to § 1225(b)(2).

DONE AND ORDERED in Chambers at Miami, Florida, this __9th__ day of July, 2026.

<br>

_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record